## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>CITY OF CHESTER, PENNSYLVANIA,<br><br>Debtor.<br><br>---<br><br>AQUA PENNSYLVANIA<br>WASTEWATER, INC.<br><br>v.<br><br>CITY OF CHESTER, PENNSYLVANIA,<br>Appellee. | Chapter 9<br><br>Bankr. Court Case No. 22-13032-amc<br><br>CIVIL ACTION<br><br>No. 23-2151 |

**MEMORANDUM**

**Perez, J.**                                                                  **April 16, 2026**

Appellant Aqua Pennsylvania Wastewater, Inc. ("Aqua") appeals from the Bankruptcy Court's May 23, 2023 order enforcing the automatic stay against a pending proceeding before the Pennsylvania Public Utility Commission ("PUC") concerning Aqua's proposed acquisition of wastewater assets from the Delaware County Regional Water Quality Control Authority ("DELCORA") pursuant to an Asset Purchase Agreement ("APA"). For the reasons below, the Court will affirm.

The Bankruptcy Court correctly held that: (i) DELCORA's proposed assignment of its rights under the 1973 Agreement to Aqua would violate the Agreement's anti-assignment provision, Bankr. ECF No. 351 ¶ 26; (ii) through the APA and the PUC Proceeding, Aqua was

1

attempting to obtain possession of, or exercise control over, property of the estate in derogation of the City's reversionary interest, Bankr. ECF No. 351 ¶ 27; (iii) that conduct violated the automatic stay, specifically 11 U.S.C. § 362(a)(3), id.; and (iv) the PUC Proceeding did not fall within the police-and-regulatory-power exception in 11 U.S.C. § 362(b)(4), Bankr. ECF No. 351 ¶ 29.

## I.    BACKGROUND

The City filed its Chapter 9 petition on November 10, 2022. *In re City of Chester, Pennsylvania*, No. 22-13032 (Bankr. E.D. Pa.), ECF No. 1. In connection with that case, the City sought to preserve and monetize what it describes as its reversionary interest in portions of the sewer system previously conveyed to DELCORA under a 1973 Agreement of Sale and Service.[1] The City's stay-enforcement motion explained that, under § 15.7 of the 1973 Agreement, if DELCORA "ceases to operate" the system, specified fixed assets and real property—excluding the treatment plant and certain other facilities—revert to the City. The motion also asserted that § 16.3 of the same agreement prohibits assignment of the parties' rights and obligations.

On November 26, 2014, the City and DELCORA executed an easement agreement permitting DELCORA to operate and maintain a pipeline on, under, and across City-owned property in connection with "a 48-inch force main and related facilities located beneath real property" within the City (the "Easement"). Bankr. ECF No. 212, Kapoor Decl. ¶ 16, Appx. 92.

---

[1] The 1973 Agreement contains two key provisions at issue in this appeal:
   a. The Reversion Provision – Section 15.7 of the 1973 Agreement: If at any time in the future during the term of this Section 15 or at the end thereof, [DELCORA] ceases to operate the system being purchased by it hereunder, then the fixed assets and the Real Property, other than the Treatment Plant and those facilities in the Collection System described in Section 2(d) shall revert to [City's] ownership rather than to the County of Delaware or any other agency. Appx.109.
   b. The Anti-Assignment Provision – Section 16.3 of the 1973 Agreement: This Agreement sets forth the entire understanding of the parties, shall be governed by the laws of the Commonwealth of Pennsylvania, shall not be assigned by either party hereto, and all amendments to it shall be in writing and signed by both parties hereto. Appx. 110.

The Easement further provides that, if DELCORA sells or leases its interest in the Easement to a third party, DELCORA must remit ten percent of the proceeds to the City. *Id.*

DELCORA and Aqua entered into an Asset Purchase Agreement ("APA") dated September 17, 2019, later amended on February 24, 2020, under which Aqua would acquire, among other things, the sewer system, the 1973 Agreement, the Easement, and other service-related agreements.[2] Bankr. ECF No. 212, Kapoor Decl. ¶¶ 17–18, Appx. 93–95. On March 3, 2020, Aqua filed an application with the Pennsylvania Public Utility Commission (the "PUC Application") seeking approval of the transaction contemplated by the APA (the "PUC Proceeding"). Bankr. ECF No. 212, Kapoor Decl. ¶ 19, Appx. 95; see also Appellant's Br. 6. The application sought, among other things, approval for Aqua's acquisition of DELCORA's wastewater systems in 49 municipalities and the assignment of 163 municipal contracts. Bankr. ECF No. 212, Kapoor Decl. ¶ 19, Appx. 95; Appellant's Br. 6.

---

[2] Several provisions of the APA are relevant here. Section 2.01 defines the "Acquired Assets" broadly to include, among other things, all real property and appurtenant interests necessary for operation of the system, including easements identified on Schedule 4.09; wastewater treatment and conveyance facilities, including pipes, pipelines, pumping stations, lift stations, plants, structures, and fixtures; contracts identified on Schedule 4.15 as "Assigned Contracts"; and personal property and fixed assets. Appx. 84–85. Schedule 4.15 lists the 1973 Agreement among the Assigned Contracts. Appx. 241. Schedule 4.09 likewise lists the Easement among the easements to be acquired by Aqua. Appx. 178.

Section 4.05 further provides that Schedule 4.05 identifies each consent, waiver, authorization, or approval required in connection with the APA and DELCORA's performance under it. Appx. 139. Schedule 4.05 includes both "Pennsylvania Public Utility Commission ('PaPUC') Approval of Transaction" and "PaPUC Approval of Consent to Assignment and Amendment to Sewer Agreements and Related Amendments." Appx. 174. In addition, Section 2.06(a) provides that, if assignment of an Assigned Contract requires third-party consent and that consent has not been obtained by closing, the APA "shall not constitute a sale, transfer, assignment, conveyance and delivery, or an attempted sale, transfer, assignment, conveyance and delivery" of that contract. Appx. 136. Section 2.06(b), however, provides that until consent is obtained, Aqua and DELCORA "shall cooperate in any commercially reasonable and economically feasible arrangements" to provide the economic and, to the extent permitted by law, operational equivalent of the transfer of non-assignable assets. *Id.*

In 2022, the Receiver notified the PUC of the City's asserted reversionary interest and attempted to intervene in the PUC Proceeding, but the PUC denied intervention on procedural grounds. Bankr. ECF No. 212, Kapoor Decl. ¶ 22, Appx. 95. The PUC's Bureau of Investigation and Enforcement nonetheless took the position that DELCORA appeared to be attempting to transfer assets it did not own in light of the City's reversionary interest. Bankr. ECF No. 212, Kapoor Decl. ¶ 21, Appx. 94. Although the PUC scheduled a hearing for February 14 and 15, 2023, it stayed the proceeding on February 6, 2023, pending a final, non-appealable ruling on the City's motion to enforce the automatic stay and a final decision in related Delaware County litigation. Appx. 295–309.

On February 3, 2023, the City moved in the bankruptcy court to enforce the automatic stay under 11 U.S.C. § 362(a)(3), arguing that Aqua's continued prosecution of the PUC Proceeding was an act to obtain possession of, or exercise control over, property of the debtor. Bankr. ECF No. 211. Aqua opposed the motion, contending that the PUC Proceeding would not itself transfer property, would not alter the City's reversionary interest, and fell within § 362(b)(4). In the alternative, Aqua asked that it and DELCORA be permitted to continue before the PUC. Bankr. ECF No. 236 at Appx. 276–86. After a hearing on February 27, 2023, the bankruptcy court entered an interim order continuing the stay of the PUC Proceeding, denying Aqua's alternative request without prejudice, and directing the parties to attempt to identify the assets subject to the asserted reversionary interest. Bankr. ECF No. 259; Appx. 389–91.

At the continued hearing on May 15, 2023, the parties reported that they had not reached agreement on what assets were subject to reversion. The City maintained that the reversion covered an operable system, not merely "isolated pipes and mains"; Aqua had produced a list of individual assets, but the City and DELCORA disputed both its completeness and its basis. Bankr. ECF No.

372 at Appx. 728–31. The hearing transcript reflects Judge Chan's concern that, if the PUC process were allowed to proceed before the scope of the reversionary interest was resolved, "a ton of litigation" would follow. She concluded that there was "not an easy way" to resolve the identification issue quickly and stated that she was "not going to allow that litigation to go forward." Bankr. ECF No. 372 at Appx. 733–34.

On May 23, 2023, the Bankruptcy Court entered the order appealed here, Bankr. ECF No. 351, granting the City's motion and enforcing the stay against the PUC Proceeding. Aqua timely appealed. Bankr. ECF No. 368. While the appeal was pending, Aqua filed a renewed motion in the bankruptcy court seeking stay relief to continue the same PUC Proceeding. On April 11, 2024, Judge Chan denied that motion under the divestiture rule, holding that the renewed motion raised issues "closely related" to, and in some respects "identical" to, issues already before this Court on appeal. Bankr. ECF No. 549 ¶¶ 12–17. The City's stay-enforcement motion relied on both the reversion and anti-assignment provisions of the 1973 Agreement. The City contended that the proposed DELCORA–Aqua transaction implicated the City's reversionary interest and that assignment of DELCORA's rights under the 1973 Agreement would violate the anti-assignment clause. Bankr. ECF No. 211 ¶¶ 29–31; Bankr. ECF No. 243 ¶¶ 3–4.

## I.     STANDARD OF REVIEW

When reviewing a bankruptcy appeal, the Court reviews the Bankruptcy Court's legal conclusions de novo, its factual findings for clear error, and its discretionary rulings for abuse of discretion. *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

## II.    DISCUSSION

This appeal presents four principal issues. The Court must first determine the scope of the appeal, including whether any separate challenge to the Bankruptcy Court's denial of stay relief is properly before it. On the merits, the Court must then decide whether the City's asserted reversionary interest and related contractual rights constitute property protected by the automatic stay under 11 U.S.C. § 362(a)(3), as incorporated into Chapter 9, and, if so, whether Aqua's continued prosecution of the PUC Proceeding constituted an act to obtain possession of, or exercise control over, that protected property. Finally, the Court must determine whether the police-and-regulatory-power exception in 11 U.S.C. § 362(b)(4) removes the PUC Proceeding from the scope of the automatic stay.

### A.  General principles governing the automatic stay

The filing of a bankruptcy petition triggers an automatic stay of, among other things, "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In Chapter 9, that protection applies to property of the debtor through 11 U.S.C. §§ 901(a), 902(1), and 922. The automatic stay arises by operation of law upon the filing of the petition; no separate request by the debtor is required. It is one of the central protections afforded by the Bankruptcy Code. Its purpose is to preserve the status quo, prevent piecemeal interference with the debtor's property and contractual rights, and give the debtor breathing space while the bankruptcy court supervises the orderly resolution of claims and administration of assets. *See City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006).

That principle is especially important here because the City does not rely on § 362(a)(1), which generally concerns actions against the debtor, but on § 362(a)(3), which protects the debtor's property from acts to obtain possession of or exercise control over it. The question, therefore, is not whether the PUC Proceeding was formally brought against the City or whether the PUC itself would adjudicate title to the disputed sewer assets. The relevant question is whether Aqua's continued prosecution of the PUC Proceeding was part of an effort to obtain possession of or exercise control over property interests the City claims are protected by the stay. In other words, this appeal does not turn on whether Aqua had already completed the transaction but on whether the Bankruptcy Court correctly halted a process that, in its view, threatened to move protected property outside the City's control.

With that in mind, the Court proceeds in two steps. It must first determine whether the City's asserted reversionary interest and related contract rights under the 1973 Agreement constitute property protected by the automatic stay. If so, the Court must then determine whether Aqua's continued pursuit of PUC approval of the APA and related assignments constituted an act to obtain possession of, or exercise control over, that protected property.

## B. Scope of the appeal

Before turning to the merits, the Court must determine the scope of the issues properly presented. This appeal properly reaches the Bankruptcy Court's May 23, 2023 order enforcing the automatic stay against Aqua's continued prosecution of the PUC Proceeding. The Court does not separately review any purported denial of affirmative stay relief under 11 U.S.C. § 362(d).

The principal reason is that Aqua did not preserve that issue for appellate review. Although Aqua asked, in the alternative, in its response to the City's motion to enforce the stay that the

7

Bankruptcy Court allow Aqua and DELCORA to proceed before the PUC, Aqua did not preserve any distinct appellate challenge of denial of that request. The City correctly points out that Aqua did not identify denial of stay relief as a separate issue in its Designation of Items to Be Included in the Record on Appeal and Statement of Issues, nor did Aqua present that issue in either the Statement of Issues or the Argument section of its opening appellate brief. Instead, Aqua briefed the case as an appeal from the order enforcing the automatic stay against the PUC Proceeding. Under settled appellate principles, issues not raised in the appellant's brief are waived. *See Shellenberger v. Summit Bancorp, Inc.*, No. 99-5001, 2006 U.S. Dist. LEXIS 36314, at *4 n.2 (E.D. Pa. June 2, 2006); *Brenner v. Local 514, United Bhd. of Carpenters*, 927 F.2d 1283, 1298 (3d Cir. 1991); *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). On that basis, any separate appeal from denial of stay relief is waived.

There is also a substantial jurisdictional problem. Even assuming Aqua intended to appeal the denial of stay relief embedded in the May 23 order, Aqua has not carried its burden of establishing appellate jurisdiction over that issue. The burden to establish appellate jurisdiction rests with the party invoking it. *See Sernaker v. Mossinghoff*, 581 F. Supp. 1548, 1549 (E.D. Pa. 1984). As the City notes, orders denying stay relief are not treated as final per se in every circumstance in this Circuit. *See In re Eagle Enters., Inc.*, 265 B.R. 671, 677 (E.D. Pa. 2001); *Leinbach v. CIT Bank*, N.A., No. 15-6834, 2016 U.S. Dist. LEXIS 16708, at *7 (E.D. Pa. Feb. 11, 2016). Aqua did not argue that the order was final as to any denial of stay relief, did not seek leave to pursue an interlocutory appeal under Bankruptcy Rule 8004, and did not obtain leave under 28 U.S.C. § 158(a)(3). The Court therefore will not treat denial of stay relief as an independently reviewable issue in this appeal.

Even if the Court were to look past waiver and jurisdiction and reach the issue, the standard of review would be abuse of discretion. *See Chevron Prods. Co. v. SemCrude, L.P.* (*In re SemCrude, L.P.*), 428 B.R. 590, 593 (D. Del. 2010) (*citing Baldino v. Wilson*, 116 F.3d 87, 89 (3d Cir. 1997)). The record clearly shows that the Bankruptcy Court articulated the applicable standard and explained why Aqua had not made the showing necessary for stay relief. Nothing in the record would support a conclusion that the Bankruptcy Court's denial of that alternative request rested on a clearly erroneous factual finding, an incorrect legal standard, or an unreasonable application of law to fact. Accordingly, the Court limits the appeal to the issue Aqua actually preserved and briefed: whether the Bankruptcy Court correctly enforced the automatic stay against Aqua's continued prosecution of the PUC Proceeding.

### C. The automatic stay protects the City's asserted reversionary interest and related contract rights.

The Court next considers whether the Bankruptcy Court correctly concluded that the City's asserted reversionary interest under the 1973 Agreement, together with its related contractual rights, constituted property protected by the automatic stay.

The filing of a bankruptcy petition gives rise to an automatic stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In a Chapter 9 case, that protection applies through 11 U.S.C. §§ 901(a) and 922, and "property of the estate" is treated as "property of the debtor." 11 U.S.C. § 902(1); *In re City of San Bernardino*, 530 B.R. 489, 499 (C.D. Cal. 2015).

The Bankruptcy Code defines estate property broadly to include "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Courts

have consistently construed that phrase expansively to include contingent, disputed, and reversionary interests. *See Feiler v. Sims* (*In re Feiler*), 218 F.3d 948, 956 (9th Cir. 2000); *PNC Bank v. Spring Ford Indus.* (*In re Spring Ford Indus.*), No. 04-0479, 2005 Bankr. LEXIS 730, at *17 (Bankr. E.D. Pa. Apr. 19, 2005), *aff'd,* 338 B.R. 255, 260 (E.D. Pa. 2006); *Morton v. Kievit* (*In re Vallecito Gas, LLC*), 440 B.R. 460, 477 (Bankr. N.D. Tex. 2010). Rights arising under executory contracts are likewise protected as property of the estate. *Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001); *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 497–98 (3d Cir. 1998).

On this record, the Bankruptcy Court correctly concluded that the City's asserted reversionary interest under the 1973 Agreement was property protected by the automatic stay. The City did not merely speculate that it might someday assert a future claim against DELCORA or Aqua. Rather, in moving to enforce the stay, the City identified present contractual rights arising under the 1973 Agreement, including a reversionary interest triggered if DELCORA ceased operating the Sewer System and an anti-assignment provision restricting DELCORA's ability to transfer its rights and obligations without the City's consent. Bankr. ECF No. 211 ¶¶ 29–31; Bankr. ECF No. 212, Kapoor Decl. ¶¶ 10–11; Bankr. ECF No. 243 ¶¶ 3–4. Those asserted rights were the very interests the City contended would be impaired if the DELCORA–Aqua transaction proceeded. Whether ultimately characterized as reversionary, contingent, or contractual, they fall within the broad category of interests protected by § 362(a)(3).

At the February 27, 2023 hearing, the City argued that the assets subject to reversion were central to the DELCORA system and that Aqua could not practically acquire and operate the remainder of that system while bypassing the City's system. Bankr. ECF No. 290 at 53–54. By the continued hearing on May 15, 2023, the parties still had not agreed on which assets were subject

10

to reversion, and Judge Chan expressly observed that there was "not an easy way" to resolve that dispute quickly and that permitting the PUC process to continue would result in "a ton of litigation." Bankr. ECF No. 372 at 29–30. Far from undermining the City's claimed interest, that unresolved dispute over scope supplied an additional reason to preserve the status quo while the City's asserted rights remained unsettled.

Aqua's contrary argument is unavailing. Aqua argued that the City's reversionary interest was not implicated unless and until closing occurred and that, because the PUC Proceeding itself would not transfer title, the automatic stay had not yet been triggered. Bankr. ECF No. 236 ¶¶ 21–23. That argument confuses the existence of the protected interest with the timing of the threatened interference. The relevant point is that the City's asserted reversionary and contractual rights existed as of the petition date and were therefore entitled to the protection of the automatic stay. The Bankruptcy Court was not required to await consummation of the transaction before recognizing that those rights were property subject to § 362(a)(3).

This also answers Aqua's repeated suggestion that the City improperly sought to "extend" the stay to non-debtors. The City did not ask the Bankruptcy Court to shield Aqua, DELCORA, or any other third party from litigation. It sought enforcement of the stay as written to prevent conduct that, in the City's view, threatened its own property interests. The City made that point directly in reply, explaining that Aqua's focus on non-debtor litigation "wholly miss[ed] the point" because the motion was directed to protecting the City's asserted rights in the Sewer System and the 1973 Agreement. Bankr. ECF No. 243 ¶¶ 2–4. Therefore, the cases addressing extension of the stay to non-debtors do not control here. On this record, the Bankruptcy Court correctly determined that the City's asserted reversionary interest and related contractual rights under the 1973 Agreement constituted property protected by the automatic stay.

11

**B. Aqua's continued prosecution of the PUC Proceeding violates § 362(a)(3)**

Having concluded that the City's asserted reversionary interest and related contractual rights are protected by the automatic stay, the Court next considers whether Aqua's continued prosecution of the PUC Proceeding constituted an act to obtain possession of, or exercise control over, that protected property. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). That language is broad. It is not limited to the final step of a transaction or triggered only once legal title has formally changed hands. Rather, it reaches acts undertaken in furtherance of obtaining possession of, or exercising control over, protected property. *See Fulton*, 141 S. Ct. at 589; *Maritime Elec.*, 959 F.2d at 1204–05.

That principle is dispositive here. Aqua argues that continued prosecution of the PUC Proceeding does not itself violate the stay because PUC approval would not, standing alone, cause DELCORA immediately to cease operating the Sewer System, consummate the sale, close the transaction, or place the disputed assets directly into Aqua's hands. However, the statute does not require the Court to wait until the final closing or transfer occurs. Courts have recognized that § 362(a)(3) reaches preliminary or intermediate steps that are integral to a later transfer or exercise of control. *See, e.g.*, *Stockschlaeder & McDonald, Esqs. v. Kittay*, 145 B.R. 797, 807 (Bankr. S.D.N.Y. 1992), *aff'd in relevant part, rev'd in non-relevant part*, 158 B.R. 914 (S.D.N.Y. 1993).

The record supports the Bankruptcy Court's conclusion that the PUC Proceeding was such a step. The APA identifies "Pennsylvania Public Utility Commission ('PaPUC') Approval of Transaction" and "PaPUC Approval of Consent to Assignment and Amendment to Sewer Agreements and Related Amendments" as required approvals. Appx. 92–93, 113. The PUC application, in turn, sought approval of Aqua's acquisition of DELCORA's wastewater systems in

12

49 municipalities and the assignment of 163 municipal contracts. Appx. 95 ¶ 19; Appx. 277. The hearing record confirms the same point: the DELCORA–Aqua transaction "can't close until the [PUC] renders its determination." Appx. 718:20–22. Thus, PUC approval was not collateral to the transaction contemplated by the APA; it was a necessary condition precedent to consummation of that transaction. Recognizing that, Aqua's characterization of the PUC Proceeding as merely "regulatory" or "preliminary" loses force. The relevant question is not whether the PUC itself would adjudicate ownership of the Sewer System or immediately transfer title. It is whether Aqua's continued pursuit of PUC approval was part of an effort to consummate a transaction affecting property protected by the automatic stay. On the record before the Bankruptcy Court, the answer was yes. The APA broadly defines the "Acquired Assets" to include system facilities, easements, contracts, and fixed assets; the 1973 Agreement appears among the "Assigned Contracts"; and the 2014 Easement appears among the identified easements. Appx. 84–85, 92–93, 113. In that respect, the approvals Aqua sought were directly tied to the transfer of the very contractual rights and utility assets the City claimed were protected by the stay.

The unresolved dispute over the scope of the City's reversionary interest further justified maintaining the status quo. By the May 15, 2023 hearing, the parties still had not agreed on which assets were subject to reversion. The City maintained that the reversion covered an operable system, not merely isolated pipes and mains; Aqua had produced a list of individual assets, but the City and DELCORA disputed both its completeness and its basis. Appx. 728–31. Judge Chan expressly observed that there was "not an easy way" to resolve the identification issue quickly and that allowing the PUC process to proceed would generate "a ton of litigation." Appx. 733–34. In those circumstances, the Bankruptcy Court acted well within its authority in preventing Aqua from continuing to pursue a transactional approval process that could affect disputed assets and rights

13

before the scope of the City's interest had been resolved. Aqua's contention that the Bankruptcy Court improperly extended the stay to a non-debtor is misplaced, as discussed above. The ruling did not shield Aqua or DELCORA from litigation; it enforced § 362(a)(3) to protect the City's asserted rights in the Sewer System and under the 1973 Agreement. *See* Appx. 289–90.

The fact that neither the City nor its Receiver was formally a party to the PUC Proceeding does not alter the analysis. What matters under § 362(a)(3) is the effect of the challenged conduct on protected property, not the caption of the proceeding in which that conduct occurs. The Receiver attempted to intervene before the PUC to assert the City's reversionary interest, but the PUC denied intervention on procedural grounds. Appx. 95 ¶ 22. The City's inability to participate in that forum does not insulate Aqua's conduct from the automatic stay. If anything, it underscores the risk that the approval process would continue to advance without adequate protection of the City's asserted rights.

The record thus confirms that Aqua sought PUC approval so that the transaction contemplated by the APA could move toward closing. The City, for its part, contended that consummation of that transaction would result in the transfer of assets to Aqua that should instead revert to the City and would effect an assignment of DELCORA's rights under the 1973 Agreement in violation of the agreement's anti-assignment provision. Appx. 288–90. Whether every aspect of the City's theory would ultimately prevail is not the point at this stage. Once the Bankruptcy Court determined that the City had asserted protected property interests under the 1973 Agreement, it was entitled to halt conduct forming an integral part of the effort to transfer or control those interests. The Court therefore concludes that the Bankruptcy Court correctly held that Aqua's continued prosecution of the PUC Proceeding constituted an act to obtain possession of, or exercise control over, property protected by the automatic stay and thus violated 11 U.S.C. § 362(a)(3).

14

### D. The police-and-regulatory-power exception does not apply

The final merits issue is whether the Bankruptcy Court correctly concluded that the police-and-regulatory-power exception in 11 U.S.C. § 362(b)(4) does not apply to the PUC Proceeding. The Court agrees that it does not.

Section 362(b)(4) provides an exception to the automatic stay for the commencement or continuation of an action or proceeding "by a governmental unit . . . to enforce such governmental unit's police and regulatory power." 11 U.S.C. § 362(b)(4). The exception is narrow. Its purpose is to permit governmental units to continue enforcing laws aimed at protecting public health, safety, and welfare, notwithstanding the debtor's bankruptcy, while still preventing governmental actors from using regulatory proceedings to advance pecuniary interests or gain an advantage over other creditors. *See In re United Healthcare Sys., Inc.*, 396 F.3d 247, 250–51 (3d Cir. 2005). The important inquiry is whether the proceeding is one brought by a governmental unit to vindicate public policy, rather than a proceeding initiated to advance private economic interests.

The Bankruptcy Court correctly concluded that the PUC Proceeding does not fall within the police-and-regulatory-power exception. Although the PUC is unquestionably a regulatory body, the proceeding before it was not commenced by the Commonwealth or by the PUC to enforce public law against the City. Rather, Aqua filed the PUC application on March 3, 2020 seeking approval of the transaction contemplated by the APA. Bankr. ECF No. 212, Kapoor Decl. ¶ 19, at Appx. 826; *see also* Bankr. ECF No. 236 at Appx. 276 (Aqua's response). The City's motion and reply further establish that the PUC application sought approval of Aqua's acquisition of DELCORA's wastewater systems, Aqua's provision of wastewater service, assignment of 163 municipal contracts, and a ratemaking base value of $276.5 million. Bankr. ECF No. 212, Kapoor Decl. ¶ 19, at Appx. 826; Bankr. ECF No. 243 ¶ 3, at Appx. 2882. In other words, the PUC

Proceeding was initiated by Aqua to advance its proposed acquisition and move the APA toward closing. It was not initiated by a governmental unit to enforce public policy.

That distinction is dispositive under § 362(b)(4). As the City pointed out in reply, the statutory exception is limited to "an action or proceeding brought by a governmental unit." Bankr. ECF No. 243 ¶¶ 10–12, at Appx. 2904–05. The record undercuts Aqua's attempt to characterize the PUC Proceeding as governmental enforcement simply because a regulator is involved. Aqua filed the application, Aqua sought the approvals, and Aqua stood to benefit from the transaction. The presence of a regulator does not convert a privately initiated approval process into an action by a governmental unit to enforce its police or regulatory power.

The record also confirms that the PUC Proceeding was pecuniary and transactional in substance. The City's filings describe the application as one seeking approval of the sale of DELCORA's assets, approval of Aqua's right to provide wastewater service, approval of the APA, and approval of assignment of contracts to Aqua, including the 1973 Agreement. Bankr. ECF No. 243 ¶ 3, at Appx. 2882; *see also* Bankr. ECF No. 212, Kapoor Decl. ¶ 19, at Appx. 826. The City further argued that, if the sale were approved, the City would receive nothing on account of its reversionary interest and the Sewer System would be transferred to Aqua rather than immediately reverting to the City. Bankr. ECF No. 243 ¶¶ 4–6, at Appx. 2882–84. That is a quintessentially commercial dispute over a proposed asset transfer, not the sort of governmental action ordinarily protected by § 362(b)(4).

The hearing record points in the same direction. At the February 27 hearing, the City argued that Aqua "can't acquire everything else and still get to the plant, because the City system is central," that the APA "does not carve out the City's assets," and that "[t]he whole design of the PUC proceeding is to get approval of the sale, which will result in the City's reversionary interest

not being honored." Bankr. ECF No. 290 at 53–54, Appx. 362–63. Counsel also emphasized that the matter was not about extending the stay to a non-debtor, but about enforcing § 362(a)(3) to prevent Aqua from taking control of assets subject to the City's reversionary interest. *Id.* at 59–60, Appx. 368–69. Those arguments reinforce that the PUC Proceeding functioned as a step in a private acquisition, not as a governmental enforcement action.

Aqua's contrary framing in this appeal is difficult to reconcile with the PUC record itself. The Receiver attempted to intervene in the PUC Proceeding to assert the City's reversionary interest, but the PUC denied intervention on procedural grounds. Bankr. ECF No. 212, Kapoor Decl. ¶ 22, at Appx. 837. The PUC's Bureau of Investigation and Enforcement took the position that DELCORA appeared to be attempting to transfer assets it did not own in light of the City's reversionary interest. *Id.* Those facts further confirm that the PUC Proceeding was not an enforcement action brought by the government against the City. It was Aqua's application to secure approvals for a private transaction despite a live dispute over the City's property rights.

For those reasons, the Bankruptcy Court correctly rejected Aqua's reliance on § 362(b)(4). The better view of the record is that the PUC Proceeding was initiated by Aqua in furtherance of a private, pecuniary transaction. Since § 362(b)(4) preserves only the governmental unit's own ability to enforce police or regulatory laws, it does not exempt the PUC Proceeding from the automatic stay.

### E. Judicial notice of Judge Chan's April 11, 2024 order

Aqua asks the Court to take judicial notice of Judge Chan's April 11, 2024 order denying Aqua's renewed motion for relief from the automatic stay. The Court may do so because the order is relevant as a subsequent procedural development. It reflects the Bankruptcy Court's conclusion

17

that Aqua's renewed motion raised issues closely related to, and in some respects identical with, those already pending before this Court on appeal. The order does not, however, constitute a merits determination as to the correctness of the Bankruptcy Court's May 23, 2023 stay-enforcement order. The Court therefore considers the April 11, 2024 order only for procedural context and accords it no substantive weight in resolving the merits of this appeal.

## III.    CONCLUSION

For all of these reasons, the Court concludes that the Bankruptcy Court correctly enforced the automatic stay against Aqua's continued prosecution of the PUC Proceeding. The Court further concludes that any separate challenge to the denial of stay relief is waived and not properly before it, that the City's asserted reversionary interest and related contractual rights are protected by 11 U.S.C. § 362(a)(3), that Aqua's continued pursuit of PUC approval of the APA constitutes conduct barred by that provision, and that the exception set forth in 11 U.S.C. § 362(b)(4) does not apply. Accordingly, the Bankruptcy Court's May 23, 2023 order will be affirmed. The Court takes judicial notice of Judge Chan's April 11, 2024 order solely as a subsequent procedural development and gives it no substantive weight in resolving this appeal.